

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-2006

# 181 South Inc v. Fischer

Precedential or Non-Precedential: Precedential

Docket No. 05-1882

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"181 South Inc v. Fischer" (2006). *2006 Decisions.* Paper 657.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/657

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-1882

_____

181 SOUTH INC., a New Jersey Corporation
d/b/a MOULIN ROUGE,

Appellant,

v.

JERRY FISCHER, in his official capacity as Director, Division
of Alcoholic Beverage Control, Department of Law and Public
Safety, an Agency of the State of New Jersey; THE
MUNICIPAL BOARD OF ALCOHOLIC BEVERAGE
CONTROL OF THE CITY OF ATLANTIC CITY, NEW
JERSEY, an Agency of the City of Atlantic City, New Jersey, a
Municipal body,

Appellees.

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 04-cv-05916)
District Judge: Honorable Robert B. Kugler

_____

Argued January 12, 2006
Before: FUENTES, ROSENN[*], and ROTH[**], Circuit Judges.

_____

[*]This case was argued before a panel consisting of Judges
Roth, Fuentes, and Rosenn.  Judge Rosenn passed away after
argument, but before the filing of this opinion.  The decision is

Stephen D. Holtzman
Holtzman & McClain
819 New Road
P.O. Box 869
Northfield, NJ 08225

Daniel A. Silver (Argued)
Silver & Silver
One Liberty Square
New Britain, CT 06051

ATTORNEYS FOR APPELLANT

Lorinda Lasus (Argued)
Office of the Attorney General of New Jersey
Division of Alcoholic Beverage Control
140 East Front Street
Trenton, NJ 08625

ATTORNEY FOR APPELLEE JERRY FISCHER

---

OPINION OF THE COURT

---

FUENTES, <u>Circuit Judge</u>.

The appellant, 181 South Inc. ("181 South"), operates an adult cabaret called Moulin Rouge, located in Atlantic City, New Jersey. The club holds a liquor license issued by the City of Atlantic City pursuant to various New Jersey regulations. One of the club's main attractions involves topless dance performances

---

filed by a quorum of the panel. 28 U.S.C. § 46(d).
**Effective May 31, 2006 Judge Roth assumed senior status.

that include sexually explicit dance routines. Fearing that these performances may result in substantial financial penalties or loss of its liquor license, 181 South filed a complaint to challenge the constitutionality of a state regulation prohibiting "any lewdness or immoral activity" on liquor-licensed premises. On cross-motions for summary judgment, the District Court denied 181 South's request for declaratory and injunctive relief and granted summary judgment in favor of ABC Director Fischer. For the reasons that follow, we will affirm the District Court and hold that the Regulation, as construed by New Jersey courts, is not unconstitutional.

## I.   Background

The New Jersey Legislature has delegated authority over the manufacture, sale and distribution of alcoholic beverages in the state to the New Jersey Division of Alcoholic Beverage Control (the "ABC") and has authorized the Director of the ABC, currently appellee Jerry Fischer, to enforce the State's rules and regulations related to alcohol. See N.J. Stat. Ann. § 33:1-3 (2006); Id. § 33:1-23. The ABC has broad authority in this realm and is statutorily authorized to promulgate rules and regulations "as may be necessary for the proper regulation and control of the manufacture, sale and distribution of alcoholic beverages." Id. § 33:1-39.

The ABC regulation at issue in this case reads, in relevant part, as follows:

> (a) No licensee shall engage in or allow, permit or suffer on or about the licensed premises:
> 1.      Any lewdness or immoral activity. . .

N.J. Admin. Code § 13:2-23.6(a)(1) (2005). The ABC enacted the Regulation to reflect "the long-standing judicial recognition that ["lewdness or immoral"] activity in conjunction with alcoholic beverage consumption can give rise to unacceptable social behavior." 22 N.J. Reg. 1820 (June 18, 1990). ABC Director Fischer has also stated in a Certification submitted to the District Court that the purpose of the Regulation is to limit the harmful secondary effects of the combination of alcohol and "lewd or

immoral activity," including overconsumption of alcohol and inappropriate physical contact between customers and dancers. The New Jersey Superior Court, Appellate Division, has construed the Regulation's prohibition of "lewd or immoral activity" as prohibiting entertainment where "'the predominant object and natural effect upon the observers-patrons of one portion of the performance [is] erotic excitation.'" In re G & J.K. Enters., Inc., 500 A.2d 43, 46 (N.J. Super. Ct. App. Div. 1985) (quoting Davis v. New Town Tavern, 117 A.2d 415, 415 (N.J. Super. Ct. App. Div. 1955)) (emphasis added).[1]

In May of 2003, the ABC cited 181 South for three separate violations of the Regulation, which were deemed to have occurred based on an undercover investigation by the state police. Though there were alleged violations of other ABC rules and regulations, what is important here is that the state police noted three female adult entertainers on 181 South's premises engaging in what the police determined to be prohibited activity under the Regulation. In one instance police observed an entertainer rubbing her breasts and vagina while onstage. She then proceeded to straddle a patron, pushing her breasts in his face and then rubbing her leg in the patron's pelvic area before rubbing his inner thighs with her hands. Police also witnessed a second entertainer caressing her breasts and massaging her vaginal area onstage. They then observed that entertainer give a patron a one-on-one dance during which she straddled him and pushed her pelvic area into his pelvic area to simulate sexual intercourse. Finally, a third entertainer–from whom one of the officers received a one-on-one dance–was seen rubbing her breasts and massaging her vagina to simulate the act of masturbation.

---

[1]When interpreting a State regulation, we generally defer to the interpretations of state trial or intermediate appellate courts. See Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000) ("The opinions of intermediate appellate state courts are 'not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" (quoting West v. Am. Tel &Tel., 311 U.S. 223, 237 (1940)).

Upon being cited for these violations, 181 South negotiated a payment to the ABC in the sum of $10,000 in lieu of a suspension of its liquor license.[2] After it paid the negotiated fee, and prior to reopening after a renovation, 181 South filed the instant lawsuit, arguing that the Regulation is unconstitutional because it proscribes protected forms of expression and fails to make clear what conduct is or is not permitted on the premises of a liquor licensee. The District Court granted summary judgment in favor of ABC Director Fischer, holding the Regulation to be constitutional.[3] This appeal followed.[4]

## II.     Discussion

181 South contends that the District Court erred in finding the Regulation constitutional and granting ABC Director Fischer's motion for summary judgment. On appeal it has raised four issues. 181 South claims that the District Court erred in rejecting 1) its First Amendment, facial challenge to the Regulation; 2) its claim that the Regulation is unconstitutionally overbroad; and 3) its claim that the Regulation is unconstitutionally vague. In addition, 181 South asserts that the District Court erred in permitting the

---

[2]Under the penalties set forth in a schedule at New Jersey Admin. Code § 13:2-19.11(I), violations of the Regulation are punishable by suspension of one's liquor license for 30, 45, 60 or 90 days, or in some instances where there have been serial violations, license revocation. Under New Jersey Admin. Code § 13:2-19.11(b), however, the "Director may suspend or revoke a license, even for a first violation."

[3]Listed Appellee the Municipal Board had its Motion for Summary Judgment denied without prejudice because it failed to submit adequate briefing.

[4]The District Court had federal question jurisdiction under 28 U.S.C. § 1331 and jurisdiction to address declaratory and injunctive relief under 28 U.S.C. § 2201 and 28 U.S.C. § 2202. We have jurisdiction pursuant to 28 U.S.C. § 1291. In reviewing grants of summary judgment, our standard of review is plenary. Hampe v. Butler, 364 F.3d 90, 93 (3d Cir. 2004).

Certification of Appellee Fischer to be used as a limiting statutory construction of the Regulation. We address each issue in turn.

### A. First Amendment Facial Challenge

We begin our analysis of the current state of First Amendment protections as they relate to erotic dance in liquor-licensed locations with California v. LaRue, 409 U.S. 109 (1972), a Supreme Court opinion with facts similar to those present here. In LaRue, the California Department of Alcoholic Beverage Control had adopted regulations that prohibited the following conduct, among others, on liquor-licensed premises:

- the actual or simulated "touching, caressing or fondling of the breast, buttocks, anus or genitals";
- the actual or simulated "displaying of the pubic hair, anus, vulva or genitals"; and
- the permitting by a licensee of "any person to remain in or upon the licensed premises who exposes to public view any portion of his or her genitals or anus."

Id. at 111-12. The Supreme Court rejected a First Amendment challenge to the regulations. As the majority explained, "as the mode of expression moves from the printed page to the commission of public acts that may themselves violate valid penal statutes, the scope of permissible state regulations significantly increases." Id. Paraphrasing United States v. O'Brien, 391 U.S. 367 (1968), the Court noted approvingly that in that case "the extent to which 'conduct' was protected by the First Amendment depended on the presence of a 'communicative element.'" LaRue, 409 U.S at 117. The Court then observed that the California regulations prohibited performances "that partake more in gross sexuality than of communication." Id. at 118. Importantly, the Court observed that the regulations did not seek to ban all performances they addressed, but only those performances that take place in establishments licensed by the state of California to sell liquor by the drink. Id.

In upholding the constitutionality of the regulations in LaRue, the Court paused to observe that performances such as

6

those proscribed in California are not without First and Fourteenth Amendment protection. However, the Court noted, "we would poorly serve both the interests for which the State may validly seek vindication and the interests protected by the First and Fourteenth Amendments were we to insist that the sort of bacchanalian revelries the [California] Department sought to prevent by these liquor regulations were the constitutional equivalent of a performance by a scantily clad ballet troupe in a theater." Id. In closing, the LaRue Court observed that, given the "added presumption in favor of the validity of the state regulation in this area that the Twenty-first Amendment [which repealed Prohibition and granted states broad leeway over the regulation of intoxicating liquors] requires, we cannot hold that the regulations on their face violate the Federal Constitution." Id.

Though LaRue's holding remains good law, its reliance on the Twenty-first Amendment was later undercut by 44 Liquormart Inc. v. Rhode Island, 517 U.S. 484 (1996). There, the Court held that "the Twenty-first Amendment does not qualify the constitutional prohibition against laws abridging the freedom of speech embodied in the First Amendment." Id. at 516. The 44 Liquormart Court took care to note, however, that "the Court's analysis in LaRue would have led to precisely the same result if it had placed no reliance on the Twenty-first Amendment." Id. at 515. The Court observed that, without regard to states' regulatory authority over alcoholic beverages under the Twenty-first Amendment, a given state may

> prohibit the sale of alcohol in inappropriate locations. Moreover. . . the States' inherent police powers provide ample authority to restrict the kind of "bacchanalian revelries" described in the LaRue opinion regardless of whether alcoholic beverages are involved.

Id. (citing Young v. Am. Mini Theatres Inc., 427 U.S. 50 (1976) and Barnes v. Glen Theatre, Inc., 501 U.S. 560 (1991)).

Though the argument could be made that the Regulation is constitutional because it falls under a state's right "to prohibit the sale of alcohol in inappropriate locations" and to "restrict the kind

7

of 'bacchanalian revelries' described in the LaRue opinion,"[5] we decline to base our holding on this point. Rather, we agree with the Seventh Circuit and conclude that "after 44 Liquormart[,] state regulations prohibiting the sale or consumption of alcohol on the premises of adult entertainment establishments must be analyzed in light of American Mini Theatres and Barnes." Ben's Bar, Inc. v. Vill. of Somerset, 316 F.3d 702, 712 (7th Cir. 2003); see also Giovani Carandola, Ltd. v. Bason, 303 F.3d 507, 513 n.2 & 519 (4th Cir. 2002) (pointing out 44 Liquormart's reliance on the "leading cases addressing the proper secondary effects analysis of ordinary public decency regulations," American Mini Theatres and Barnes, and noting that "the result in LaRue remains sound not because a state enjoys any special authority when it burdens speech by restricting the sale of alcohol, but rather because the regulation in LaRue complied with the First Amendment"); Sammy's of Mobile Ltd. v. City of Mobile, 140 F.3d 993, 996 (11th Cir. 1998) (noting that ordinances such as the one in LaRue are content-neutral and, after 44 Liquormart, should be analyzed under the immediate scrutiny test articulated in Barnes and O'Brien); Odle v. Decatur County, 421 F.3d 386, 399 (6th Cir. 2005) (agreeing with the "number of courts [that] have interpreted [44] Liquormart's reaffirmation of LaRue's holding to mean that the LaRue regulations would have survived intermediate scrutiny–and . . . that they would have had to survive such scrutiny to comport with the First Amendment") (footnote omitted).

In American Mini Theatres, a case relating to adult entertainment zoning ordinances, the Supreme Court declared that "[r]easonable regulations of the time, place, and manner of

---

[5]See BZAPS, Inc. v. City of Mankato, 268 F.3d 603, 608 (8th Cir. 2001) (determining that an adult entertainment liquor regulation is constitutional based solely on LaRue); Sammy's of Mobile, Ltd. v. City of Mobile, 140 F.3d 993, 996 n.5 (11th Cir. 1998) (relying in part on LaRue in upholding an ordinance relating to nude dancing in liquor-licensed locations); Giovani Carandola, Ltd. v. Bason, 303 F.3d 507, 523 (4th Cir. 2002) (Niemeyer, J., dissenting) (noting that "LaRue remains binding precedent with respect to similarly worded statutes").

protected speech, where those regulations are necessary to further significant governmental interests, are permitted by the First Amendment."  427 U.S. at 63 n.18.  Barnes, a case involving a public indecency statute as applied to nude dancing, adopted the four-part O'Brien test for determining the constitutionality of a government rule or regulation proscribing protected expressive conduct.  Such a rule or regulation is justified if 1) it is "within the constitutional power of the Government"; 2) it "furthers an important or substantial governmental interest"; 3) "the governmental interest is unrelated to the suppression of free expression"; and 4) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."  Barnes, 501 U.S. at 567 (quoting O'Brien, 391 U.S. at 377).

Applying this test, the Regulation, as interpreted by the New Jersey courts, does not violate the First Amendment.  First, New Jersey's regulation of the sale of alcoholic beverages at "inappropriate locations" falls within its general police power.  44 Liquormart, 517 U.S. at 515.  Accordingly, the Regulation is an exercise of power within New Jersey's constitutional authority. See Ben's Bar, 316 F.3d at 722 (upholding a similar regulation on this prong of the Barnes test).  Second, it is well-established that New Jersey's interest in curtailing the "unacceptable social behavior" that can arise in conjunction with adult entertainment is important and substantial.  See City of Erie v. Pap's A.M., 529 U.S. 277, 296-97 (2000) (noting the importance of combating the harmful secondary effects of nude dancing).  Third, New Jersey's interest in enacting the Regulation is unrelated to the suppression of free expression, because the Regulation does not prohibit individuals from participating in "lewd or immoral activity." Rather, it only prohibits such activity from taking place on the premises of liquor-licensed establishments.  In other words, the Regulation "is not a restriction of erotic expression, but a prohibition of nonexpressive conduct (i.e., serving and consuming alcohol)" on premises where such expression takes place.  Ben's Bar, 316 F.3d at 726.  Finally, the Regulation's restriction on First Amendment freedoms is no greater than is essential to the furtherance of that interest.  Indeed, it is tailored precisely to pursue its stated purpose: the reduction of the "unacceptable social

9

behavior" that so often arises in conjunction with the combination of erotic entertainment and alcohol. See Ben's Bar, 316 F.3d at 727 (noting that "as a practical matter, a complete ban of alcohol on the premises of adult entertainment establishments is the only way the [municipality] can advance [its] interest" in "combating the secondary effects resulting from the combination of nude and semi-nude dancing and alcohol consumption"); Pap's A.M., 529 U.S. at 301 (noting that the ordinance in question in that case, relating to nude dancing, "regulates conduct, and any incidental impact on the expressive element of nude dancing is de minimus"). We are thus satisfied that the Regulation passes the Barnes test and accordingly does not violate the First Amendment's guarantee of freedom of expression.

### B.     Overbreadth

181 South next contends that even if the Regulation is constitutional under the Barnes test, it is unconstitutionally overbroad on its face because it proscribes a substantial number of legitimate expressions of First Amendment rights. In order to show that a statute is unconstitutionally overbroad, 181 South must show that the Regulation is "not readily subject to a narrowing construction by the state courts" and that its "deterrent effect on legitimate expression is both real and substantial." Erznoznik v. Jacksonville, 422 U.S. 205, 216 (1975). A limiting construction may be found where a state court or enforcement agency has opined as to how the statute should be interpreted. Ward v. Rock Against Racism, 491 U.S. 781, 795-96 (1989).

As discussed above, the Regulation's prohibition of "lewd and immoral activities" on liquor-licensed premises has been construed by the New Jersey Superior Court as prohibiting entertainment where "the predominant object and natural effect upon the observers-patrons of one portion of the performance [is] erotic excitation." G & J.K., 500 A.2d at 46. The G & J.K. court also offered guidance to officials charged with enforcing the Regulation by holding that exposing breasts and bare anal area to patrons constitutes a violation of the Regulation. See id. at 48. 181 South's overbreadth challenge therefore fails the Erznoznik test because the Regulation has been narrowed by statements of

interpretation by state courts.

Moreover, under the second prong of the Erznoznik test, the New Jersey courts' narrowing construction of the Regulation limits its reach mainly to entertainment similar to that shown at Moulin Rouge. We are thus satisfied that the Regulation satisfies that prong as well. See Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973) ("particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep"); see also Virginia v. Hicks, 539 U.S. 113, 122 (2003) ("The overbreadth claimant bears the burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists.") (quoting N.Y. State Club Ass'n v. City of New York, 487 U.S. 1, 14 (1988)).

### C. Vagueness

181 South's next contention is that the Regulation is unconstitutionally vague. This claim fails as well. The Supreme Court has held that "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." Vill.of Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 495 (1982) (footnote omitted). As discussed above, the conduct observed on 181 South's premises clearly falls within the ambit of the conduct the Regulation proscribes at liquor-licensed businesses. Thus, the Regulation was not vague as applied to 181 South, and we need not hypothesize as to its potential vagueness in other cases.

### D. The Fischer Certification

Finally, 181 South maintains that the District Court erred in permitting the certification of ABC Director Fischer to be used as a limiting statutory construction of the Regulation. Because we believe that the Regulation is not unconstitutional based solely on its construction by New Jersey courts, we need not reach this issue.

11

**III.    Conclusion**

For the reasons stated above, we will affirm the District Court's grant of ABC Director Fischer's motion for summary judgment.